IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CHRISTOPHER RUSSELL,              *

     Plaintiff,                  *

vs.                               *         CASE NO. 4:15-CV-98 (CDL)

SHERIFF JOHN DARR, *et al.*,       *

     Defendants.                 *

_____

O R D E R

    Plaintiff Christopher Russell was previously in the custody of the Muscogee County Sheriff as a pretrial detainee at the Muscogee County Jail.  Plaintiff claims that he was unlawfully detained and mistreated while in custody.  He brings this action against the Consolidated Government of Columbus, Georgia ("CCG"), Muscogee County Sheriff John Darr, Deputy Anthony Ermi, and Deputy Juan A. Merritt, in their official and individual capacities.  He asserts claims pursuant to 42 U.S.C. §§ 1983 & 1988 for the violation of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.  He also asserts claims arising from violations of the Georgia Constitution.

    CCG seeks dismissal of all of Plaintiff's claims against it and against the Sheriff and his deputies in their official capacities (ECF No. 7).  Sheriff Darr filed a motion to dismiss

Plaintiff's claims against him in his individual capacity (ECF No. 15).   All Defendants seek dismissal of Plaintiff's claims seeking a contempt order and injunction.   For the reasons explained below, the Court grants CCG's motion to dismiss.   The Court grants in part and denies in part Darr's motion to dismiss.   Additionally, the Court dismisses Plaintiff's claims for a contempt order and an injunction relating to the Justice Department consent decree.

In response to the motions to dismiss, Plaintiff referred to facts not included in his complaint and filed a motion for leave to amend his complaint (ECF No. 31).   Curiously, some of the facts relied on in his briefs opposing Defendants' motions to dismiss are still not included in Plaintiff's proposed amended complaint.   The Court grants Plaintiff's motion to amend his complaint, and for the sake of judicial economy, construes that motion to include the facts contained in the proposed amended complaint plus the facts described in his briefs opposing the pending motions to dismiss.   Thus in deciding the pending motions to dismiss, the Court considers Plaintiff's original complaint, Plaintiff's proposed amended complaint, and the facts stated in Plaintiff's briefs in opposition to Defendants' motions to dismiss.   Plaintiff shall file his amended complaint within 7 days of today's order.   Any claims

included in that amended complaint that are dismissed by today's order shall be deemed dismissed.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations must be sufficient "to raise a right to relief above the speculative level. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555.  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

## FACTUAL ALLEGATIONS

Plaintiff (hereinafter "Russell") alleges the following facts in support of his claims:

## I.   Russell's Arrest and First Appearance

On June 18, 2013 Russell was arrested by the Muscogee County Sheriff's Department on charges of theft by taking, robbery, criminal damage to property, and simple battery.[1]

---

[1] Russell initially alleged that he was arrested by the Columbus Police Department.  Compl. ¶ 11, ECF No. 1.  He seeks to correct this allegation to state that he was arrested by the Sheriff's Department. Proposed First Am. Compl. ¶ 1, ECF No. 31-1.  The entity that arrested Russell is immaterial to determine the present motions to dismiss.  To

Compl. ¶ 11.  Although Russell "was very adamant that he was not
guilty of these charges," he was taken to the Muscogee County
Jail.  *Id*. ¶ 12.  Three days after his arrest, Russell had his
first appearance in Recorder's Court and all charges against him
were dismissed.  *Id*. ¶ 12.

## II.  Russell's Additional Ten-Day Incarceration

After the dismissal, jail officials told Russell that he
would not be released because he was "under a hold for a
probation violation."  *Id*. ¶ 13.  Russell responded that he was
on unsupervised probation and that he intended to inform his
probation officer that he had been arrested. *Id*. ¶ 14.  Russell
demanded to see paperwork regarding the alleged probation
violation and to speak with his probation officer.  *Id*. ¶ 15.
Authorities at the jail never responded to either request.  *Id*.

Sheriff Darr knows Russell personally and came to Russell's
jail cell to inquire about Russell's complaints that he was
being held illegally.  Pl.'s Resp. to Darr's Mot. to Dismiss 2,
ECF No. 23.  Russell explained to Darr that "any probation hold
would be improper."  *Id.* Darr said he would look into the
matter, but Russell did not see Darr again until after he was
released from the jail, at least ten days later.  *Id.*

---

the extent, however, that Russell believes this allegation is relevant
to his remaining claims, the Court grants Russell leave to correct
this allegation.

**III. Incident with Deputy Ermi and Deputy Merritt**

During the ten days, Russell and Ermi had a verbal altercation regarding Russell not receiving a "snack pack." Compl. ¶ 18.  At the end of the argument, Ermi threatened to beat Russell.  *Id.*  Then, on July 1, 2013 around 11:30 a.m., Ermi was escorting Russell to another floor in the jail.  In the elevator, Russell was alone with two deputies—Ermi and Merritt. *Id.*  Ermi threw a "snack pack" at Russell's face "with such force that it . . . caused [Russell] to flinch and turn." *Id.* ¶ 20; Proposed First Am. Compl. ¶ 2.[2]  As soon as Russell turned back towards the deputies, they struck him in the head and face.  Compl. ¶ 21.  The deputies continued to attack him until he was pinned to the floor.  *Id.* ¶¶ 21 & 22.  Then, six to nine additional officers arrived and handcuffed Russell.  *Id.* ¶ 22.  This series of events was "caught on camera and is available on DVD."  *Id.* ¶ 23.  Ermi was suspended for three days as a result of the elevator incident.  *Id.* ¶ 25.

**IV. Russell's Medical Examination, Disciplinary Segregation, and Release**

Following the beating, Russell was examined by medical staff at the jail clinic.  *Id.* ¶ 46.  Russell had "visual scars, scrapes, and bruises" on his face, a knot on his head, and

---

[2] Russell seeks to amend his complaint to assert that Ermi, not Merritt was the individual who threw the snack pack.  First Proposed Am. Compl. ¶ 2.  This correction is immaterial to the present motions, but the Court grants Russell leave to correct the allegation because it is relevant to Russell's remaining claims.

complained that he was in excruciating pain. *Id*. ¶ 47. Despite his complaints, Russell was given no medication or treatment. *Id*. As a result of the beating, Russell suffered "several serious and permanent injuries." *Id*. ¶ 45.

After the medical examination, jail officials placed Russell in disciplinary segregation. *Id*. ¶ 24. About two hours later, Russell was released from jail. *Id*. Russell was never told why he was held in jail for ten days after all charges against him were dismissed. *Id*. He never spoke to a judge or had any proceedings related to the "probation hold." Id. ¶ 51. He alleges that no probation warrant or probation violation to justify the detention appear in his records. *Id*. ¶ 51.

On his release, Russell went immediately to the emergency room. Pl.'s Resp. to CCG's Mot. to Dismiss 4, ECF No. 24. An x-ray revealed a chipped bone in Russell's shoulder. *Id*.

**V. Allegations about Defendants**

At all times relevant to Russell's claims, Darr served as Sheriff of Muscogee County, Georgia and Ermi and Merritt were correctional officers at the jail. Russell alleges that Ermi and Merritt were employed by CCG. Compl. ¶¶ 8 & 9. But Russell also alleges that they were sheriff's deputies and does not dispute CCG's contention that they were Sheriff's Department employees. *Id*. ¶ 45. Thus, the Court will analyze the motion

as if Ermi and Merritt were sheriff's deputies.  This fact does not change the outcome of the present motions to dismiss.

## VI.  The 1999 Agreement

Russell also makes allegations regarding a previous lawsuit by the United States Department of Justice involving the Muscogee County Jail.  Russell alleges that in 1999 former Muscogee County Sheriff Ralph Johnson entered a memorandum of understanding and Joint Motion for Conditional Dismissal with the DOJ agreeing to improve conditions at the jail.  *Id.* ¶ 27. According to Russell, Defendants are no longer subject to the 1999 Agreement, but are still subject to a Memorandum of Agreement, which calls for compliance with the 1999 Agreement. *Id.* ¶ 30.   Russell alleges that Defendants have "stubbornly refused" to improve the conditions in the jail.  *Id.* ¶ 32. As a result, there have been a number of deaths at the jail and complaints about conditions and inadequate medical care have increased.  *Id.* ¶ 33.

## VII. Russell's Claims

Based on these factual allegations, Russell asserts the following claims for damages: (1) false arrest/unlawful arrest; (2) excessive/unreasonable use of force; (3) cruel and unusual punishment; (4) failure to secure medical care/negligent medical care;  (5) violation  of  due  process/false  imprisonment; (6) violation of due process for his disciplinary segregation;

and (7) negligent hiring, training, and supervision. Russell also asks the Court to hold Defendants in contempt for violating the 1999 Agreement and grant an injunction preventing further violations of the Agreement.

DISCUSSION

## I.  Official Capacity Damages Claims

CCG filed a motion to dismiss all claims against Darr, Ermi, and Merritt in their official capacities based on Eleventh Amendment immunity and a failure to allege a basis for municipal liability. For purposes of Eleventh Amendment immunity, Russell's official capacity claims against Ermi and Merritt are treated the same as official capacity claims against the sheriff. *See Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir. 2007)(per curiam)(holding that employees of the sheriff were entitled to Eleventh Amendment immunity in their official capacities). Official capacity claims against the sheriff are suits "against the entity" for which the sheriff acted as an agent. *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 n.2 (1997).

As explained in more detail below, the Court concludes that the sheriff acted as an "arm of the state" while performing all of the functions giving rise to Russell's claims, except providing medical care. Thus, Defendants, in their official capacities, are entitled to Eleventh Amendment immunity on these counts. Regarding the medical care claim, Russell fails to

sufficiently allege municipal liability.  Accordingly, the Court grants CCG's motion to dismiss Russell's official capacity claims arising from the medical care.

A.  Eleventh Amendment Immunity

The Eleventh Amendment bars suits in federal court against the state or an "arm of the state." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)(en banc).  "Whether a [Georgia sheriff] is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id*. at 1308.  The Eleventh Circuit uses four factors to determine whether an entity acts as an "arm of the state" when performing a particular function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity."  *Id*. at 1309. Applying these factors, the Eleventh Circuit held that a Georgia sheriff acts as an "arm of the state" when he establishes the use of force policy at the jail and trains and disciplines his deputies in that regard.  *Id.* at 1328-29.

Following that reasoning, the sheriff also acts as an "arm of the state" when the sheriff or his deputies arrest citizens for violations of the law or administer the policy for placement and classification of jail inmates. *Mladek v. Day,* 293 F. Supp.

2d 1297, 1304 (M.D. Ga. 2003)("[T]he Eleventh Circuit made it clear that it found no distinction between [the use of force policy] function and the law enforcement function performed by sheriffs when they arrest citizens for violations of the law."); *accord Youngs v. Johnson*, No. 4:06-CV-19(CDL), 2008 WL 4816731, at *6 (M.D. Ga. Oct. 30, 2008). Additionally, post-*Manders* Eleventh Circuit case law suggests that the sheriff acts as an "arm of the state" when performing most law enforcement functions, especially operating the jail. *See Purcell ex rel Estate of Morgan v. Toombs Cty.*, 400 F.3d 1313, 1325 (11th Cir. 2005)(interpreting *Manders* broadly and holding that the sheriff acts as an "arm of the state" when promulgating policies and procedures governing conditions of confinement); *Burgest Colquitt Cty.*, 177 F. App'x 852, 855 (11th Cir. 2005)(per curiam)(affirming the district court's holding that the sheriff and sheriff deputies were entitled to Eleventh Amendment immunity for claims based on plaintiff's arrest).

Here, all of Russell's claims, except those for inadequate medical care, implicate law enforcement functions where the sheriff acts as an "arm of the state." First, Russell claims that he was arrested unlawfully and that Ermi and Merritt used excessive force against him, both state functions under *Mladek* and *Manders*. Russell also claims a due process violation based on the failure to give him an administrative hearing before

imposing two hours of disciplinary segregation. The sheriff's state function to determine the policies for inmates' classification and placement reasonably includes determining policies regarding inmate placement in disciplinary segregation.

Additionally, Russell claims that his due process right to not be falsely imprisoned was violated when he was held in jail for ten days after all charges against him were dismissed. The Court concludes that determining the policies regarding the release of inmates is part of the sheriff's state function to operate the jail and arrest citizens who violate the law. *See Youngs*, 2008 WL 4816731, at *6 ("In general, the Eleventh Circuit has concluded that Georgia sheriffs are an 'arm of the State' in the operation of county jails and are therefore entitled to Eleventh Amendment immunity for claims arising from jail operations.").

Finally, Russell's claims for negligent hiring, supervision, and training with regard to any state function are also barred by the Eleventh Amendment. The sheriff acts as an "arm of the state" when he trains and supervises his employees to fulfill state functions. *See Manders*, 338 F.3d 1304, 1328 (holding that the sheriff acts as an arm of the state when training and disciplining deputies with regard to his use of force policy). The sheriff also acts as an "arm of the state" when hiring and firing the deputies that carry out his law

enforcement policies. *See Pellitteri v. Prine*, 776 F.3d 777, 783 (11th Cir. 2015)(holding that a Georgia sheriff enjoys Eleventh Amendment immunity from wrongful termination suits). Thus, based upon Eleventh Amendment immunity, the Court grants CCG's motion to dismiss Russell's official capacity claims as to counts I, II, III, V, VI, and VII.

B.   Russell's Official Capacity Claims for Inadequate Medical Care

Although a Georgia sheriff acts as an "arm of the state" when performing most law enforcement functions, the sheriff acts as a county agent when making decisions regarding the medical care provided to county inmates. *See Youngs*, 2008 WL 4816731, at *6-*9 (finding that the sheriff acted as the final policymaker for the county in promulgating the policies on inmate medical care); *see also Manders*, 338 F.3d at 1322 (distinguishing the sheriff's function to carry out the county's obligations "involving jail structure and inmates' food, clothing, and medical necessities" from the sheriff's law enforcement functions). Thus, Russell's official capacity claims for inadequate medical care are claims against CCG and not barred by the Eleventh Amendment. *See Youngs*, 2008 WL 4816731, at *9 (finding that official capacity claims against the sheriff regarding medical care in the jail are the functional equivalent of claims against the county); *see also*

*Lightfoot v. Henry Cty. Sch. Dist.*, 771 F.3d 764, 771 (11th Cir. 2014)("[C]ounties . . . are clearly not immune under the Eleventh Amendment").

Russell's federal law claims for inadequate medical care must be asserted as Fourteenth Amendment violations under § 1983.[3]  To claim a constitutional violation, Russell must allege facts to show deliberate indifference to his serious medical needs. *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1234 (11th Cir. 2010).  Even if Russell alleges sufficient facts to state a constitutional violation, CCG is not automatically liable for this violation. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th Cir. 2001)(citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 663 (1978)).  To state a claim for municipal liability under § 1983, Russell must allege that CCG's policy or custom caused the deliberate indifference to his serious medical needs. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-04 (1997).

Russell does not assert that CCG has a relevant official policy.  Additionally, while the single decision of a final policymaker for CCG is sufficient for municipal liability, *Scala v. City of Winter Park*, 116 F.3d 1396, 1399-1400 (11th Cir.

---

[3] Russell's claims must be asserted under the Fourteenth Amendment Due Process Clause, not the Eighth Amendment because Russell was a pretrial detainee, not a prison inmate. *Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011).  But the standard is the same under either provision. *Id.*

1997), Russell fails to allege that a final policymaker acted here. Under Georgia law, Darr is the final policymaker regarding inmate medical care at the jail. *Youngs*, 2008 WL 4816731, at *9. Here, Russell makes no allegations about Darr related to his medical care.[4]

With no alleged policy and no alleged involvement of the final decisionmaker, Russell's only remaining avenue for liability against CCG is the existence of "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Young v. City of Augusta*, 59 F.3d 1160, 1172 (11th Cir. 1995)(quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)). Russell's allegations fall short of alleging a widespread practice.

Russell relies on CCG's 1999 Agreement with the DOJ as evidence of a widespread practice of deliberate indifference to inmates' serious medical needs. But an Agreement to settle potential litigation in 1999 does not establish a widespread

---

[4] In Russell's proposed first amended complaint, Russell claims that he told Darr "of all matters listed in this Complaint" and that Darr "did not respond." Proposed First Am. Compl. ¶ 3. But the Court construes this allegation as consistent with Russell's allegation in response to Darr's motion to dismiss, which suggests that Russell complained to Darr before he was injured and needed medical care. Pl.'s Resp. to Darr's Mot. to Dismiss 2, ECF no. 23. Russell does not, therefore, plausibly allege that he complained to Darr about his medical treatment.

pattern of constitutional violations in 2013. First, the Agreement is not conclusive evidence that there were constitutional violations at the jail when CCG entered the Agreement. *See Cagle v. Sutherland*, 334 F.3d 980, 987 (11th Cir. 2003)(per curiam)(explaining that a voluntary consent decree to settle prior litigation does not expand an inmate's constitutional rights). Second, even if there were constitutional violations in 1999, the medical care giving rise to Russell's claim occurred in 2013. Russell alleges no facts giving rise to a reasonable inference that CCG was in violation of the Agreement in 2013.

Russell summarily asserts that CCG has "stubbornly refused to improve the conditions of the Jail," but he fails to allege facts to support this conclusion. Compl. ¶ 32. In his single factual allegation, Russell claims that since 1999, "there have been a number of deaths within the Muscogee County Jail and complaints regarding jail conditions and inadequate medical care has [sic] been on the increase." *Id.* ¶ 33. Russell does not allege how many deaths occurred or whether any of the deaths were a result of deliberate indifference to inmates' serious medical needs. Additionally, Russell fails to allege the circumstances surrounding the inmate complaints, particularly whether any of the complaints had merit.

Without any factual context regarding the circumstances of the alleged deaths and complaints at the jail, the Court cannot conclude that CCG has a widespread practice of deliberate indifference to inmates' medical needs. *See Williams v. Barrett*, No. 1:05-CV-2569-TWT, 2008 WL 476122, at *3 (N.D. Ga. Feb. 13, 2008)(concluding that a list of inmate complaints without reference to whether any of the complaints had merit or the circumstances surrounding the complaints did not show the supervisors were on notice of widespread constitutional violations).  Thus, CCG is not liable under § 1983.  And to the extent that Russell asserts state law claims against Defendants in their official capacities for inadequate medical care, these claims are barred by state-law sovereign immunity. *Tattnall Cty. v. Armstrong*, 333 Ga. App. 46, 51-52, 775 S.E.2d 573, 577-78 (2015)(holding that the General Assembly has not waived county's sovereign immunity for claims by inmates for inadequate medical care).  Accordingly, Russell fails to state an official capacity claim for inadequate medical care.

## II. **Claims Against CCG**

CGG also seeks dismissal of all claims asserted directly against CCG.  Russell's federal constitutional claims against CCG are all asserted through § 1983.  To hold CCG liable under § 1983, Russell must allege that CCG's official policy, unofficial policy or custom, or the single act of a final

policymaker for CCG caused the alleged violations. *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003)(en banc)(plurality opinion). Russell must also allege facts showing that CCG has authority and responsibility over the governmental function giving rise to each of Russell's claims. *Id.* at 1329-31 ("Holding counties liable in the absence of control . . . would impose even broader liability than the respondeat superior liability rejected in *Monell*."). As explained above, Russell fails to allege municipal liability against CCG for his medical needs claim. Regarding Russell's remaining claims, Russell fails to allege that CCG has authority over the governmental functions giving rise to these claims.

Russell alleges that Darr has authority over the incarceration of inmates at the jail, the use of force and disciplinary segregation policies, and the hiring, training, supervising and firing of deputies to carry out these policies. Compl. ¶ 7. As explained above in the Eleventh Amendment immunity discussion, the sheriff performs these functions as an "arm of the state," not a policymaker for the county. "[C]ounties have no authority over what corrections duties sheriffs perform, or which state offenders serve time in county jails, or who is in charge of the inmates in the county jails." *Manders*, 338 F.3d at 1318. Since the sheriff does not act as a policymaker for CCG when performing these functions and CCG has

no control over the sheriff's performance, CCG cannot be held liable for the sheriff's acts regarding these functions. *See Grech*, 335 F.3d at 1348 (concluding that a Georgia sheriff was "not a county policymaker under § 1983 for his law enforcement conduct"); *see also McMillian*, 520 U.S. at 793 (holding that the Alabama sheriff was a state policymaker when executing his law enforcement duties and, therefore, not a county final policymaker). Accordingly, Russell cannot maintain claims against CCG under § 1983.[5]

Regarding state law claims against CCG, the Court previously explained that Russell's medical care claim is barred by state-law sovereign immunity. To the extent that Russell asserts any other state law claims, these claims are also barred. Under Georgia law, "[a] county is not liable to suit for any cause of action unless made so by statute." O.C.G.A § 36-1-4. In Georgia, "[s]overeign immunity is not an affirmative defense . . . and the waiver must be established by the party seeking to benefit from the waiver." *Forsyth Cty. v. Greer*, 211 Ga. App. 444, 446, 439 S.E.2d 679, 681 (1993)(quoting *Ga. Dep't of Human Res. v. Poss*, 263 Ga. 347, 348, 434 S.E.2d 488, 489 (1993), *overruled on other grounds*, *Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 272 Ga. 209, 528 S.E.2d 508

---

[5] To the extent that Russell alleges that Ermi and Merritt were CCG employees and not sheriff's employees, that would not change the result of CCG's motion to dismiss. Neither Ermi nor Merritt were final policymakers for municipal liability.

(2000)).  Russell pointed to no authority demonstrating a waiver of CCG's sovereign immunity.  Thus, Russell may not maintain any state law claims against CCG.  Accordingly, the Court grants CCG's motion to dismiss.

## III. Individual Capacity Claims Against Darr

Darr filed a motion to dismiss all claims against him in his individual capacity.  The Court denies Darr's motion to dismiss as to Russell's false imprisonment claim, but grants Darr's motion as to all other counts.

### A.   Federal Law Individual Capacity Claims Against Darr

Russell asserts his federal claims against Darr under § 1983.  As a supervisor, Darr is only liable under § 1983 for the acts of his subordinates if he personally participated in the violation or there is a causal connection between Darr's actions and the violation.  *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007).

#### 1.   *Counts I, II, III, IV, and VI Are Dismissed*

Russell fails to state claims against Darr based on his arrest, Ermi's and Merritt's uses of force, his medical care, and his disciplinary segregation.  Russell does not allege that Darr personally participated in the conduct giving rise to these claims.  Thus, to establish Darr's supervisory liability, Russell must show a causal connection by alleging: (1) a "history of widespread abuse" that put Darr "on notice of the

need to correct the alleged deprivation" and that Darr failed to do so; (2) that Darr's "custom or policy results in deliberate indifference to constitutional rights;" or (3) that Darr "directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).

Russell fails to allege "a history of widespread" constitutional violations in inmate arrests, uses of force, medical care, or disciplinary segregation. *Cf. Keith v. DeKalb Cty.*, 749 F.3d 1034, 1048 (11th Cir. 2014)("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration . . . ." (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999))). Russell again relies on the 1999 Agreement to show that Darr was on notice of widespread constitutional violations. But the Agreement is insufficient to show supervisory liability for many of the same reasons it was insufficient to show municipal liability: (1) the Agreement does not conclusively establish that there were constitutional violations at the Jail in 1999; (2) the Agreement occurred fourteen years before the conduct giving rise to Russell's claims; and (3) Russell fails to allege any specific facts to

support the conclusion that CCG has violated the Agreement. *See supra* § I.B.

Russell also fails to allege that Darr's customs or policies caused deliberate indifference to inmates' constitutional rights. Russell's assertion that all his claims were "perpetrated in accordance with the policies, customs and/or guidelines of [CCG]," Comp. ¶ 38, is conclusory and "carr[ies] no weight." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013)(per curiam). Moreover, Russell's allegation that Ermi was suspended as a result of the elevator incident indicates that Ermi's use of force *violated* Darr's policies.

Finally, Russell makes no allegation that Darr directed or knew of and failed to stop the alleged constitutional violations. Russell's third proposed amendment to his complaint—that he told Darr "of all matters listed in this complaint" and Darr "did not respond . . . " does not change this analysis. Proposed First Am. Compl. ¶ 3. As noted above, the Court construes this allegation as consistent with Russell's more specific allegation in his response to Darr's motion to dismiss.

Russell's response suggests that he complained to Darr once, shortly after his first appearance hearing about being held unlawfully and then did not see Darr again until after his

release.[6]   Thus, Russell does not plausibly allege that he told Darr about Ermi's and Merritt's uses of force, his medical care, and his disciplinary segregation.   These events happened at least ten days after Russell's first appearance hearing, just hours before he was released.   Construing all of Russell's additional allegations as consistent, Russell fails to allege a causal connection between Darr's conduct and Ermi's and

---

[6] Although Russell does not expressly state in his response that the conversation with Darr took place shortly after his first appearance hearing, that is the only reasonable inference drawn from the context. After the heading "Complaint Will Be Amended to Show Defendant Darr Did Have Personal Contact with Plaintiff Which Constitute [sic] a Casual [sic] Connection," Russell's response reads:

> After the Plaintiff went before the Columbus Recorders [sic] Court and all charges against him had been dismissed, he was returned to a jail cell and informed that he would not be released due to a probation hold.
>
> Plaintiff had complained to several jail staff officials that he was on unsupervised probation and that he was instructed to report all incidents to his probation officer.
>
> Defendant DARR, who knows Plaintiff personally, came to Plaintiff's jail cell and inquired about this matter. Plaintiff explained to Defendant DARR that he was being held illegally because any probation hold would be improper.   Defendant DARR advised Plaintiff that he would look into the matter.   Plaintiff did not speak with Defendant DARR again until he was released from jail and he walked to the Courthouse to make a report about the entire incident.   As it turns out, Plaintiff was held in jail for at least ten (10) days with no type of hold of any kind on him.   This personal communication with the Plaintiff would give rise to a casual [sic] connection on the claim of the Plaintiff's due process violation and on Plaintiff's claim for false imprisonment.

Pl.'s Resp. to Darr's Mot. to Dismiss 2, ECF No. 23.

Merritt's uses of force, his medical care, and his disciplinary segregation.

Regarding Russell's claim based on his arrest, Russell conceivably could have complained to Darr that he was arrested unlawfully when he spoke to him after his first appearance hearing.  Even if he did, however, it is unclear how Darr's conduct after the fact could have "caused" Russell to be arrested without probable cause.  *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009)("[B]asic princip[les] of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused the violation.").  Moreover, Russell fails to allege any facts regarding the circumstances of his arrest.  Thus, the Court grants Darr's motion to dismiss as to counts I, II, III, IV, and VI.

### 2. Count VII Negligent Hiring, Training and Supervision

Russell also claims that Darr negligently hired, trained, and supervised his deputies.  "[U]nder § 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'"  *Keith*, 749 F.3d at 1052 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  Russell must allege that Darr had actual or constructive notice that a deficiency in his

training caused his employees to violate inmates' constitutional rights. *Id.* Russell makes no such allegations.

Russell argues that Ermi's and Merritt's uses of excessive force in the elevator are evidence that Darr failed to properly train and supervise them. Compl. ¶¶ 59-62. The allegation of one violation, however, does not sufficiently allege Darr's liability. *See Keith*, 749 F.3d at 1053 ("To establish that [a] supervisor was on actual or constructive notice of a deficiency of training, '[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary.'" (second alteration in original)(quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011))). Additionally, Russell argues that the fact that Ermi was suspended and that Merritt was fired for an unrelated incident is evidence that Darr failed as a supervisor. But those facts standing alone establish no such thing. It could be argued that the fact that the deputies were disciplined for violations of Darr's policies suggests that Darr did supervise his deputies. Thus, Russell fails to state a claim against Darr for a failure to properly hire, train, and supervise his deputies.

### 3.   Count V Due Process/False Imprisonment

Although his other claims fail, Russell does state a plausible claim against Darr for his alleged ten-day false imprisonment. "A § 1983 claim of false imprisonment requires a

showing of common law false imprisonment and a due process violation under the Fourteenth Amendment." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009)(per curiam).  For common law false imprisonment, Russell must allege (1) an intent to confine, (2) an act resulting in confinement that is not lawful, and (3) the victim's awareness of the confinement. *Id.*  "The Fourteenth Amendment Due Process Clause includes the 'right to be free from continued detention after it was or should have been known that the detainee was entitled to release.'"  *Id.* (quoting *Cannon v. Macon Cty.*, 1 F.3d 1558, 1563 (11th Cir. 1993)).  To establish a due process violation, Russell must allege facts to show that Darr was deliberately indifferent to Russell's right to be free from false imprisonment.  *Id.* Deliberate indifference requires that Darr "had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence." *Id.*

    Even if Russell states a claim against Darr for false imprisonment, however, "[q]ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010)(quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)).  To overcome Darr's qualified immunity

defense, Russell must allege sufficient facts to establish (1) a constitutional violation and (2) that the right was clearly established at the time of the violation.  *Id*. at 734.

### a.   CONSTITUTIONAL VIOLATION

Russell sufficiently alleges common law false imprisonment because he states that he was purposefully held at the jail for at least ten days after he was entitled to release. Additionally, Russell's continued detention "after it was or should have been known that [he] was entitled to release" rises to the level of a due process violation. *Campbell*, 586 F.3d at 840 (quoting *Cannon*, 1 F.3d at 1563).

Russell also sufficiently alleges Darr's deliberate indifference to this violation.   Russell alleges Darr's subjective knowledge of a serious risk of harm to Russell by claiming that he complained to Darr that he was being detained without cause.   Additionally, Russell alleges that he did not see Darr again until his release and never received any explanation for his ten-day incarceration.   Construed in the light most favorable to Russell, these allegations plausibly show that Darr unreasonably took no action in the face of the known risk that Russell's rights were being violated. *See Cannon*, 1 F.3d at 1564-65 (holding that the officer's failure to take any steps to ensure the plaintiff was correctly arrested after the plaintiff repeatedly claimed that she was

misidentified was sufficient to sustain a jury finding of
deliberate indifference). Thus, Russell sufficiently alleges
that Darr was deliberately indifferent to the violation of his
rights.

b.   CLEARLY ESTABLISHED

The Court further finds that Russell's right to be free
from false imprisonment was clearly established in 2013. *See
Campbell*, 586 F.3d at 840 ("The Fourteenth Amendment Due Process
Clause includes the 'right to be free from continued detention
after it was or should have been known that the detainee was
entitled to release.'" (quoting *Cannon*, 1 F.3d at 1563)); *see
also Cannon*, 1 F.3d at 1564-65 (holding that incarcerating the
plaintiff for three days despite strong evidence that she had
been misidentified was a clearly established due process
violation). Thus, Russell sufficiently states a § 1983 claim
against Darr for the ten-day false imprisonment and Darr is not
entitled to qualified immunity on this claim. Accordingly, the
Court denies Darr's motion to dismiss as to count V.

B.   State Law Individual Capacity Claims Against Darr

Darr argues that he is entitled to official immunity for
any state law claims sufficiently alleged in Russell's
complaint. "The doctrine of official immunity . . . protects
individual public agents from personal liability for
discretionary actions taken within the scope of their official

authority, and done without willfulness, malice, or corruption." *Nichols v. Prather*, 286 Ga. App. 889, 896, 650 S.E.2d 380, 386 (2007)(quoting *Standard v. Hobbs*, 263 Ga. App. 873, 875, 589 S.E.2d 634, 636-37 (2003)); *see also* Ga. Const. Art. I, Sec. II, Par. IX(d).   Thus, Darr "may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure."  *Id.*

Here, Russell fails to make any argument that Darr is not entitled to official immunity.  *See generally* Pl.'s Resp. to Darr's Mot. to Dismiss, ECF No. 23.  And it appears that Russell seeks to hold Darr personally liable for discretionary, not ministerial acts.  *See Nichols*, 286 Ga. App. at 896, 650 S.E.2d at 386 ("A discretionary act . . . calls for the exercise of personal deliberation and judgment" while "[a] ministerial act is commonly one that is simple, absolute, and definite." (quoting *Standard*, 263 Ga. App. at 875, 589 S.E.2d at 636-37)); *Harvey v. Nichols*, 260 Ga. App. 187, 191, 581 S.E.2d 272, 276 (2003)(holding that the sheriff was entitled to official immunity "with respect to the operation of the jail, the supervision of its officers and employees, and the establishment of policies and procedures").[7]  Accordingly, Darr cannot be held

---

[7] The provision of medical care is sometimes a ministerial act.  *See Graham v. Cobb Cty.*, 316 Ga. App 738, 742-43, 730 S.E.2d 436, 443-44 (2012).  But "[w]hether the acts upon which liability is predicated are ministerial or discretionary is determined by the facts of the particular case."  *Nichols*, 286 Ga. App. at 896, 650 S.E.2d at 387

liable for any of these claims unless he acted with malice or intent to injure. Russell fails to allege any facts to support an inference that Darr acted with malice or an intent to injure Russell. Thus, any state law claims against Darr individually are dismissed.

CONTEMPT AND INJUNCTION CLAIMS

To the extent that Russell asserts separate claims arising from Defendants' alleged violation of the Muscogee County Jail Agreement with the Justice Department, the Court lacks jurisdiction over Russell's claims for an injunction and contempt order. Russell seeks an injunction preventing Defendants from violating the 1999 Agreement. Because Russell is no longer an inmate at the Muscogee County Jail, however, his claim for injunctive relief is moot. *See Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986)(per curiam)(dismissing the plaintiff's claim for injunctive relief as moot because the plaintiff was released from incarceration). This reasoning extends to Russell's motion to hold Defendants in contempt. *See Long v. Barry*, 149 F.3d 1187 (8th Cir. 1998)(per curaim)(unpublished)(holding that the plaintiff's claim to hold defendants in contempt was moot because plaintiff was no longer

---

(quoting *Brown v. Taylor*, 266 Ga. App. 176, 177, 596 S.E.2d 403, 405 (2004)). And Russell makes no argument that Darr failed to perform any "simple, absolute, and definite" duties here.

incarcerated).    Accordingly,   the   Court   dismisses   Russell's
claims for an injunction and contempt order.

CONCLUSION

In   conclusion,   the   Court   grants   CCG's   motion   to   dismiss
(ECF  No.  7).   The  Court  denies  Darr's  motion  to  dismiss  as  to
Russell's  due  process  false  imprisonment  claim  against  him  in
his  individual  capacity,  but  grants  Darr's  motion  to  dismiss  as
to  all  other  claims  (ECF  No.  15).   The  Court  dismisses  Russell's
claims  for  an  injunction  and  contempt  as  moot.   In  addition  to
the  false  imprisonment  claim  against  Darr  in  his  individual
capacity,   the   claims   against   Ermi   and   Merritt   in   their
individual capacities remain pending.

Within   7   days   of   today's   order,   Russell   shall
electronically  file  his  amended  complaint  with  regard  to  his
remaining  claims  against  Ermi  and  Merritt  individually  and  his
single  remaining  claim  against  Darr,  but  Russell  may  not  attempt
to  revive  claims  that  have  been  dismissed.   The  stay  previously
issued  in  this  action  is  lifted,  and  within  21  days  of  today's
order,  the  parties  shall  submit  a  joint  proposed  scheduling
order  consistent  with  the  requirements  of  Rule  16  and  26  of  the
Federal  Rules  of  Civil  Procedure  and  this  Court's  previous  Rules
16/26 order.

30

IT IS SO ORDERED, this 4th day of December, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA